# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Autumn Lee Tangas,                                              Case No. 3:15CV1566

        Plaintiff

    v.                                                              **ORDER**

International House of Pancakes LLC,

        Defendant

This is a wrongful-discharge case arising under Ohio law.

The plaintiff, Autumn Lee Tangas, is a former Franchise Business Consultant for the defendant, International House of Pancakes LLC (IHOP).

In 2011, the Federal Bureau of Investigation raided five IHOP restaurants in Ohio and Indiana that a franchisee working under Tangas operated. Believing she was a suspect in the ensuing federal investigation, Tangas retained counsel. IHOP instructed Tangas to cooperate with the FBI's investigation; on advice of her attorney, Tangas refused.

IHOP then fired her for consulting with counsel and refusing to cooperate with the FBI.

Tangas brings this suit for wrongful discharge in violation of public policy and for indemnification.

Jurisdiction is proper under 28 U.S.C. § 1332(a)(1).[1]

---

[1] Tangas is a citizen of Ohio and IHOP is a citizen of Delaware and California, the states in which its sole member, Dine Equity, Inc., is incorporated and has its principal place of business. Diversity jurisdiction is, accordingly, proper. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009).

Pending is IHOP's motion to dismiss under Fed. R. Civ. P. 12(b)(6). (Doc. 4). For the reasons that follow, I grant the motion in part without prejudice and deny it in part.

**Background**

IHOP hired Tangas in 1991. Due to her excellent performance, the company promoted her to Senior Operations Consultant and, eventually, Regional Manager of Operations Services.

Tangas moved to Toledo, Ohio in 2003 to assume the Franchise Business Consultant post. It was her responsibility to help IHOP franchisees improve sales and maximize profits. In October of that year, IHOP assigned Tangas to work with, among others, a franchisee named Tarek Elkafrawi. Elkafrawi operated five IHOP restaurants in Northwest Ohio and one in Indiana.

IHOP employees who had worked with Elkafrawi "routinely warned" Tangas "of his poor business structure, poor management team and poor sales history." (Doc. 1-1 at ¶10). Tangas soon developed her own dim opinion of Elkafrawi's operations. She reported her concerns to her supervisors, but her reports went unheeded.

In September, 2011, the FBI and U.S. Immigration and Customs raided Elkafrawi's home and IHOP restaurants. Tangas learned about the raids and contacted her supervisor, who instructed her to "assess and report on the situation." (*Id.* at ¶18).

Tangas asked what she should do if the FBI questioned her about Elkafrawi. An attorney representing IHOP's parent organization, Dine Equity, "specifically instructed [Tangas] to talk to the FBI." (*Id.* at ¶19).

On September 26, two FBI Agents went to Tangas's home and questioned her about Elkafrawi. Tangas explained "she had no involvement with or access to Elkafrawi's hiring practices and various transactions involving insurance claims" – *i.e.*, the subjects of the federal investigation.

Case: 3:15-cv-01566-JGC Doc #: 12 Filed: 02/16/16 3 of 8. PageID #: 163

(*Id.* at ¶21). At the conclusion of the interview, which had "grow[n] increasingly hostile and accusatory," the agents subpoenaed documents from Tangas.

Soon thereafter, an attorney for Dine Equity contacted Tangas about the interview. Tangas said the FBI Agents had instructed her not to discuss the interview with anyone. In response, the Dine Equity lawyer told Tangas she had an obligation, as an IHOP employee, to report her conversation with the agents.

When Tangas asked "the attorney if she was representing [Tangas]," counsel said "she only represented Dine Equity and IHOP." (*Id.* at ¶24). Believing "her job was in jeopardy," Tangas shared "the highlights" of her interview with the FBI. (*Id.*). Tangas then hired counsel at her own expense.

IHOP's legal department asked Tangas to travel to California and participate in a meeting with the FBI. On the advice of counsel, Tangas refused.

After this refusal, IHOP presented Tangas with a revised IHOP Code of Conduct. The company had amended the Code after the raids "to state that an employee must cooperate with all legal investigations." (*Id.* at ¶26). An HR representative told Tangas she would lose her job if she did not sign the policy, so Tangas signed. IHOP again asked Tangas to meet with the FBI. Tangas, again relying on the advice of counsel, refused.

On March 2, 2012, IHOP fired Tangas "for refusing to speak with the FBI and for retaining her own personal counsel." (*Id.* at ¶28).

Nearly three months later, a grand jury in the United States District Court for the Northern District of Ohio handed down an indictment against Elkafrawi, Tangas, and seventeen others. The indictment charged Tangas with fraud, money laundering, making a false statement to a federal

3

agent, and misprision of a felony. These charges "related directly to [Tangas's] role and job duties as Elkafrawi's [Franchise Business Consultant] or arose directly as a result of the interview she gave to the FBI at [IHOP's] instruction." (*Id.* at ¶29).

Two years later, in May, 2014, the U.S. Attorney dismissed all charges against Tangas. By that time, Tangas had incurred more than $130,000 in attorney's fees defending herself in the criminal case.

In 2015, Tangas sued IHOP in the Common Pleas Court of Lucas County, Ohio, claiming: 1) wrongful termination in violation of Ohio's public policy favoring the right to consult with counsel; and 2) indemnification for the attorney's fees she incurred in the criminal case.

IHOP removed the case to this court on the basis of diversity jurisdiction.

## Discussion

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. Wrongful Discharge

Tangas first alleges IHOP violated Ohio law by firing her "for consulting with, retaining and following the advice of counsel not to provide further statements to the FBI." (Doc. 1-1 at ¶39). She contends Ohio has a clear public policy encouraging individuals to consult with an attorney "on all

legal matters whether civil or criminal," and that, in dismissing her for seeking such advice, IHOP wrongfully discharged her. (*Id.* at ¶38).

IHOP responds the complaint fails to allege a wrongful-discharge claim because Tangas's firing neither implicates a clear public policy nor jeopardizes any such policy.

According to IHOP, the complaint is "bereft of context" because it does not discuss, at least not with the detail IHOP believes appropriate, the indictment against Tangas. (Doc. 4 at 12). The indictment establishes, in IHOP's view, that it fired Tangas because of allegations she had defrauded the company. It contends that the public-policy exception to the employment-at-will doctrine does not protect employees like Tangas, who are "accused of perpetrating crimes against their employers." (*Id.* at 14).

To state a claim for wrongful discharge in violation of public policy, a plaintiff must allege: 1) the existence of a clear public policy, whether embodied in a constitution, statute, administrative regulation, or the common law; 2) allowing a company to fire an employee under circumstances like those alleged in the complaint would jeopardize that policy; 3) conduct related to the policy motivated the dismissal; and 4) there was no overriding, legitimate business justification for the plaintiff's dismissal. *Painter v. Graley*, 70 Ohio St. 3d 377, 384 n.8 (1994).

The first and second elements are legal questions for the court, while the third and fourth are factual questions for the jury. *Neely v. Crown Solutions Co., LLC*, 2014 WL 1091977, *2 (S.D. Ohio).

The Ohio courts have determined "the act of firing an employee for consulting an attorney could serve as the basis for a public policy exception to the common-law employment-at-will-doctrine." *Simonelli v. Anderson Concrete Co.*, 99 Ohio App. 3d 254, 259 (1994); *accord Chapman*

5

*v. Adia Servs., Inc.*, 116 Ohio App. 3d 537, Syllabus (1997) ("When an employer terminates an employee for consulting an attorney regarding an issue that affects the employer's business interest, the employer has violated the clear public policy."); *Momchilov v. McIlvaine Trucking Int'l, Inc.*, 2010 WL 4978073, (N.D. Ohio) (Lioi, J.) (recognizing that plaintiffs in *Simonelli* and *Chapman* "were able to establish that they went to a lawyer to inquire about vindicating a clear legal right that each plaintiff's employer did not want exercised").

The allegations in Tangas's complaint fit well within Ohio's public policy favoring unconstrained access to counsel and thus satisfy the first two elements of a public policy wrongful-discharge claim.

Tangas contends she was a longtime IHOP employee with an unimpeachable record. When one of the franchisees she supervised became the target of a federal investigation, Tangas, at IHOP's direction, initially cooperated with the FBI. However, the hostile and accusatory tone of that meeting led her to retain counsel. When she then refused, on counsel's advice, IHOP's demand to cooperate further with the FBI, IHOP fired her specifically "for refusing to speak with the FBI and retaining her own personal counsel." (Doc. 1-1 at ¶28).

As IHOP observes, Tangas was able to exercise her right to consult with counsel and avoid possibly incriminating herself. But doing so cost her her job. This consequence manifestly places the public policy favoring access to counsel in jeopardy. *Cf. Chapman*, 116 Ohio App. 3d at 544 ("The courthouse door must be open to the people of Ohio, and it is not ajar when citizens may be fired for entering.").

IHOP's motion mostly ignores these allegations and emphasizes, in the name of providing "context," facts and allegations that appear nowhere in the complaint – namely, the contents of the criminal indictment, and the company's "actual" reasons for firing Tangas.

But considering the indictment for that purpose is entirely improper, as doing so would allow IHOP "to question the evidentiary foundation of [Tangas's] complaint, thereby depriving [her] of the presumption of truth to which [she is] entitled at this stage of the litigation." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 441 (6th Cir. 2012).

What is more, the indictment did not come down until May, 2012, some two-and-a-half months after IHOP had fired Tangas. To be sure, IHOP contends it was aware of Tangas's alleged role in Elkafrawi's scheme to defraud the company before the indictment issued. But any present assertion and argument about what IHOP knew when it fired Tangas is, at this state, premature and must await discovery and summary judgment or trial.

Because Tangas's complaint states a plausible claim for wrongful discharge in violation of Ohio's public policy, I overrule the motion to dismiss as to that claim.

### B. Indemnification

Tangas's second claim is for indemnification under Ohio's LLC Act, O.R.C. § 1705.32©. She contends the statute requires an LLC like IHOP to indemnify employees who incur attorney's fees while successfully defending themselves with respect to a suit or claim arising from their employment.

IHOP argues this statute is inapplicable because, *inter alia*, IHOP is an LLC that exists under Delaware, rather than Ohio, law.

7

Tangas's opposition does not address whether Ohio or Delaware law applies. Instead, she contends she has adequately stated a claim for indemnification and is entitled to take discovery to learn whether IHOP must indemnify her.

I agree with IHOP that Tangas's opposition as to this claim is, more or less, an attempt to amend the complaint. But it is hornbook law that a plaintiff cannot amend a complaint through arguments in an opposition brief. *E.g.*, *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 842 (S.D. Ohio 2012). I will, therefore, dismiss this claim, though without prejudice to Tangas's ability to seek leave to amend her complaint as to the indemnification claim.

## Conclusion

It is, therefore,

ORDERED THAT:

1. Defendant's motion to dismiss (Doc. 4) be, and the same hereby is, granted in part without prejudice and denied in part as provided herein; and

2. Leave be, and the same hereby is, granted to plaintiff to file, on or before or March 11, 2016, a motion for leave to file an amended complaint; defendant to file response by March 30, 2016; plaintiff to reply on or before April 15, 2016.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge